CITY OF NEW YORK, et al.
Bruce Cronin, et al.

v.

James A. BAKER III, Secretary of State, et al., Appellants.

Nos. 88–5236, 88–5237.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1989.

Decided July 11, 1989.

Gregory C. Sisk, Attorney, U.S. Dept. of Justice, with whom John R. Bolton, Asst. Atty. Gen. at the time the brief was filed, Jay B. Stephens, U.S. Atty. and Michael Jay Singer, Atty., U.S. Dept. of Justice, were on the brief, for appellants.

Steven R. Shapiro, with whom Leonard Boudin and Peter L. Zimroth were on the brief, for appellees.

Before MIKVA, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

The United States appeals from a judgment and order of the district court in three consolidated cases requiring that nonimmigrant visas issue to four aliens invited to speak in the United States whose visa applications had been denied because of considerations of foreign policy. On appeal, we find that only one of the cases presents a live controversy and hold that in that case the court exceeded its authority by ordering that a visa issue. Accordingly, we vacate that portion of the district court's order and remand for further proceedings.

### I. BACKGROUND

#### A. Statutory and Procedural Background

Section 212(a) of the Immigration and Nationality Act of 1952 lists thirty-three separate categories of aliens who "shall be ineligible to receive visas and shall be excluded from admission into the United States." 8 U.S.C. § 1182(a) (1982). The twenty-seventh, at issue here, bars

> [a]liens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States.

*Id.* § 1182(a)(27) ("subsection 27").

This controversy initially involved the following three actions contesting the State Department's denial, under subsection 27, of nonimmigrant visas to four aliens whose names and affiliations appear in parentheses: *Abourezk v. Bush*, No. 88–5235 (Tomas Borge, Nicaragua's Minister of the Interior); *City of New York v. Baker*, No. 88–5236 (Olga Finlay and Leonor Rodriguez Lezcano, members of the Federation of Cuban Women); and *Cronin v. Baker*, No. 88–5237 (Nino Pasti, former member of the Italian Senate and participant in activities of the World Peace Council).

Each of these individuals had been invited by American citizens and organizations to come to this country at various times in 1983 to engage in speaking tours or, in the case of Senator Pasti, to address a rally.

In each instance, their applications were denied because of a State Department determination that their entry "for the purposes and during the period specified in the application would have been prejudicial to the conduct of the foreign affairs of the United States." Affidavit of Lawrence S. Eagleburger, Under Secretary of State for Political Affairs, paras. 12–14 (Feb. 28, 1984) ("Unclassified Eagleburger Affidavit"). Their American sponsors filed complaints in the district court seeking declaratory and injunctive relief. The court initially entered summary judgment for the government. *Abourezk v. Reagan*, 592 F.Supp. 880 (D.D.C.1984).

A divided panel of this court vacated the district court's judgment and remanded for further proceedings on two statutory issues. *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986). We need only address the first, namely, whether subsection 27 permits exclusion of aliens based solely on a State Department determination that their mere entry or presence in the United States, rather than their anticipated activities after entry, would prejudice American interests.

While we acknowledged that considerations of foreign policy could justify the exclusion of an alien under subsection 27, we concluded that neither its statutory language nor legislative history was dispositive of the "activity/mere entry" question. *Id.* at 1053–54. Although the government argued that Congress had acquiesced in the government's administrative interpretation permitting exclusion on the basis of entry alone, we found that it had not presented enough evidence of such acquiescence to the trial court.

Accordingly, we remanded the case to afford the government the opportunity to present additional evidence on this issue. *Id.* at 1053–56. The Supreme Court affirmed our decision without opinion by an equally divided (3–3) vote. *Reagan v. Abourezk*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987).

On remand, the district court granted summary judgment to the plaintiffs. *Abourezk v. Reagan*, No. 83–3739, 1988 WL 59640 (D.D.C. June 7, 1988) ("Mem.

Op."). The court found that while the government had presented some new evidence of an administrative practice, acquiesced in by Congress, to support its interpretation of subsection 27, that evidence was "only imperceptibly more weighty than it was when these cases were before the Court in 1984." *Id.* at 14–15. Because it believed, on the basis of our previous opinion, that substantial additional evidence was necessary to justify a ruling for the government, the district court concluded that subsection 27 only permitted exclusion on the basis of anticipated prejudicial activity after entry. *Id.* at 7–9 & n. 11. The district court ordered the government to grant entry visas to the aliens, *id.* at 21–22, but stayed the issuance of its order pending appeal.

B. Events Following the District Court's Decision on Remand

1. *The Moynihan–Frank Amendment*

The government took an appeal on the merits in *Abourezk*, but appealed only the scope of the district court's order in *City of New York* and *Cronin*. The government did not pursue a full appeal in the latter cases because it believed that the "Moynihan–Frank Amendment," which was enacted subsequent to the denial of the aliens' visa applications, prohibited exclusion of these aliens on the bases initially asserted. The Amendment establishes a general prohibition against the exclusion of aliens because of

> beliefs, statements, or associations which, if engaged in by a United States citizen in the United States, would be protected under the Constitution of the United States.

Pub.L. No. 100–204, § 901(a), 101 Stat. 1399–1400 (as extended by Pub.L. No. 100–461, § 555, 102 Stat. 2268–36 to –37 (1988)).

2. *Presidential Proclamation 5887*

On October 22, 1988, President Reagan issued Presidential Proclamation 5887, 53 Fed.Reg. 43,185 (Oct. 26, 1988), which prohibits "officers and employees of the Government of Nicaragua" from entering this country as nonimmigrants. The parties agreed that the Proclamation constituted an independent intervening cause for future exclusions of Tomas Borge, the Interior Minister of Nicaragua, and that therefore his case was moot. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (case becomes moot if neither party has legally cognizable interest in final determination of factual and legal questions). Accordingly, in our March 1, 1989 order, we dismissed the appeal in *Abourezk* and instructed the district court to vacate its judgment and dismiss that case. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950).

II. DISCUSSION

The government's surviving appeals, in *City of New York* and *Cronin*, are limited to objections to the scope of the district court's order. The government urges that both cases are at least "prudentially moot" and therefore should be dismissed. The government favors this resolution because when a case becomes moot pending appeal, the Supreme Court has instructed us to vacate the judgment of the trial court. *See Munsingwear*, 340 U.S. at 39, 71 S.Ct. at 106. Thus, the government would be free of the district court's holding that subsection 27 does not permit the exclusion of an alien on the basis of entry or presence alone. Alternatively, the United States argues that the district court exceeded its authority by ordering that the government issue the aliens "appropriate entry visas."

A. Mootness

As we have previously recognized, the doctrine of mootness has "two distinct branches." *Chamber of Commerce v. Department of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980). The first is grounded in the jurisdictional limitations dictated by the Constitution: under Article III, a federal court is without power to act unless it is presented with a live "case or controversy." *Id.*, citing *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). The second branch, which might be termed "prudential mootness," does not concern a court's power to grant relief, but rather its exercise of discretion in the use of that power. Thus, "[i]n some circumstances, a controversy, not actually moot, is so attenuated that

considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id.* (citation omitted); *see also Community for Creative Non–Violence v. Hess,* 745 F.2d 697, 700–02 (D.C.Cir.1984).

The Supreme Court has recognized this second aspect of the mootness doctrine in cases involving requests for injunctive and declaratory relief. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (while court's power to grant injunctive relief survives discontinuance of illegal conduct, the moving party must satisfy the court that relief is needed); *A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 341, 7 L.Ed.2d 317 (1961) (declaratory judgment is discretionary remedy that may be withheld where challenged practice is undergoing significant change so that its ultimate form cannot be predicted). This case presents questions under both branches of the mootness doctrine.

### 1. City of New York *and Presidential Proclamation 5377*

■ *City of New York* originally involved the non-immigrant visa applications of Olga Finlay and Leonor Rodriguez Lezcano, who had been invited to visit the United States by the New York City Commission on the Status of Women. The applicants were described by the State Department as "officers of the Federation of Cuban Women, an instrumentality of the Communist Party of Cuba." Unclassified Eagleburger Affidavit, para. 14. As Finlay has since died, only Lezcano's right to a visa remains at issue.

Presidential Proclamation 5377, 50 Fed. Reg. 41,329 (Oct. 10, 1985), entitled "Suspension of Entry as Non-immigrants by Officers or Employees of the Government of Cuba or the Communist Party of Cuba," was signed by President Reagan on October 4, 1985. Section 1 of the Proclamation states:

Entry of the following classes of Cuban nationals as nonimmigrants is hereby suspended: (a) officers or employees of the Government of Cuba or the Communist Party of Cuba holding diplomatic or official passports; and (b) individuals who, notwithstanding the type of passport that they hold, *are considered by the Secretary of State or his designee* to be officers or employees of the Government of Cuba or the Communist Party of Cuba.

*Id.* (emphasis added).

In our earlier opinion we noted that "[i]f this Proclamation covers Finlay and Lezcano, the President's directive might constitute an independent intervening cause for future exclusions, and thus render the *City of New York* case moot" in Article III terms. 785 F.2d at 1049 n. 2. We declined to decide this issue, however, because the record was inadequate at the time, and because a finding of mootness in this one case would not have relieved us of the responsibility to decide the common issues raised by all three cases. We therefore left the question of the Proclamation's impact to the district court on remand. *Id.* The district court, however, did not consider the question when it revisited the case.

The government argues that the Proclamation bars Lezcano's entry because the State Department has determined that Lezcano is a member of the Communist Party of Cuba. This determination assertedly constitutes an independent and intervening cause for future exclusions, and therefore the controversy over Lezcano's visa denial under subsection 27 is moot.

We agree that Proclamation 5377 moots *City of New York.* Contrary to appellees' suggestion in their Statement on Mootness (submitted in response to our Feb. 17, 1989 order to show cause), it is irrelevant that the mootness issue was not pursued in, or discussed by, the district court. A question of mootness may be raised at any time because it "implicates [the court's] jurisdiction." *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 537, 98 S.Ct. 2923, 2927, 57 L.Ed.2d 932 (1978); *see also Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978).

It is clear that the Proclamation applies to Lezcano. It states, in explicit terms, that if the Secretary of State or his designee makes the required determination, the alien may not be admitted. Here, the Secretary's designee affirmed that "at the

time I ratified [the] decision to deny the visas to [Finlay and Lezcano] I was satisfied that they were both Cuban Communist Party officials." Affidavit of Lawrence S. Eagleburger, Under Secretary of State for Political Affairs, at 4 (Feb. 28, 1984) (initially submitted to district court *in camera* and later declassified) ("Classified Eagleburger Affidavit"). We have no basis for questioning this determination.

While we declined to decide this issue previously, we find it appropriate to do so now because the case is in its final stages and no common issues on the merits remain. Accordingly, we dismiss *City of New York* as moot, vacate the district court's judgment, and instruct the court to dismiss the case.

2. Cronin v. Baker *and the Moynihan–Frank Amendment*

■ This case concerns the visa application of former Italian Senator Nino Pasti, a participant in activities of the World Peace Council, who had been invited to address a rally in Boston protesting the placement of American Pershing missiles in Europe.

The government argues that the Moynihan–Frank Amendment, which prevents exclusion of aliens merely on the basis of "past, current, or expected beliefs, statements, or associations" protected by the U.S. Constitution, would not permit a denial of a visa to Pasti "solely for the reasons related to his membership in the World Peace Council," Reply Brief at 4, and therefore renders *Cronin* prudentially moot because it constitutes a significant change in the law. In suggesting that we dismiss *Cronin* as moot, the government urges us to rely on the concurring opinion in *Allende v. Shultz*, 845 F.2d 1111, 1121–22 (1st Cir.1988) (Breyer, J., concurring).

In *Allende,* the government denied a visa to Mrs. Salvador Allende under subsection 27 on the ground that her *entry* into the United States at the time of her application would have been prejudicial to our foreign policy interests. The district court granted plaintiffs' request for a declaratory judgment rejecting the government's interpretation of subsection 27.

On appeal, a divided panel rejected the contention that the Moynihan–Frank Amendment rendered the case prudentially moot:

> The [Moynihan–Frank Amendment] does not address the entry versus activity distinction raised by the case at bar. Absent a ruling by this court, the government may persist in its current policy of excluding aliens upon the mere allegation that entry alone will adversely affect foreign policy. [While Mrs. Allende might be granted visas in the future,] [t]he government has not ... revised its interpretation of subsection 27. The mere voluntary cessation of its challenged activity does not, in our opinion, moot the controversy.

845 F.2d at 1115 n. 7.

The concurrence disagreed, arguing that because the challenged practice (i.e., denying a visa under subsection 27 on "entry or presence" grounds) was allegedly undergoing significant change as a result of the Amendment, it was unlikely to recur. Therefore, the concurrence contended that the court should withhold the discretionary remedy of a declaratory judgment. *Id.* at 1122, *citing Mechling Barge Lines,* 368 U.S. at 331, 82 S.Ct. at 341, and *Chamber of Commerce v. DOE,* 627 F.2d at 292. If the government renewed the challenged practice, plaintiffs could obtain court review at that time. *Id.*

We agree with the *Allende* majority that the Moynihan–Frank Amendment does not bear on the entry versus activity question. Thus, it does not moot *Cronin* and its holding, which the government has declined to appeal, that subsection 27 does not permit the exclusion of an alien on the ground that his mere entry into the United States would prejudice American interests.

Were we to accede to the government's position with respect to mootness, we would be required to dismiss the case. If Pasti then filed a new visa application, the State Department would be free to reassert its earlier position, which the government has not renounced. Rather, the government has merely conceded that Pasti may not be excluded under subsection 27 for the reasons advanced in this litigation. It is well settled that voluntary cessation of a challenged practice does not in and of itself

moot a case when the party could renew it. *See W.T. Grant,* 345 U.S. at 632–33, 73 S.Ct. at 897. We therefore decline the government's invitation to dismiss *Cronin.*

**B. The Scope of the District Court's Order**

■ The district court declared that the government's "refusal to grant an entry visa to ... Senator Pasti ... is not authorized by [subsection 27]," and ordered the government to "issue an appropriate entry visa to ... Pasti ... so that [he] may accept the invitations proffered by plaintiffs and other groups in [this] country who wish to hear his views." *Abourezk v. Reagan,* C.A. No. 83–3739 (D.D.C. June 7, 1988), order accompanying Mem. Op. at 2.

The government argues that the district court should have limited the injunctive relief to the scope of its declaration that the government had improperly denied the applications at issue on the basis of subsection 27. The government points out that each visa application is considered on its own particular merits under the circumstances existing at the time an alien seeks entry into the United States. To order the issuance of a visa after several years of litigation ignores the possibility that intervening events might bar Pasti under any one or more of the thirty-three grounds listed in 8 U.S.C. § 1182(a). Appellees respond that they have never interpreted the district court's order as prohibiting the government from denying Pasti a visa for "appropriate" reasons, and therefore they have no objection to a clarification of the order.

The parties therefore agree that the injunctive relief should be tailored to parallel the declaratory relief ordered by the district court. Nonetheless, we reject appellees' attempt to read the court's order in this way. The order requires that "appropriate" entry visas be issued, not that the State Department decide whether Pasti may be denied a visa for other appropriate reasons. In our view, "appropriate" refers only to the type and duration of the visa the Department has been ordered to issue.

The authority to issue visas belongs solely to the consular officers of the United States. *See* 8 U.S.C. §§ 1101(a)(9) & (16), 1104(a)(1), 1201(a). This circuit has recognized, as has every other circuit to consider the issue, that the courts are without authority to displace the consular function in the issuance of visas. *See, e.g., Castenada–Gonzalez v. INS,* 564 F.2d 417, 428 n. 25 (D.C.Cir.1977). *Accord Centeno v. Shultz,* 817 F.2d 1212, 1213–14 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988); *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 970–71 (9th Cir.1986); *Burrafato v. Department of State,* 523 F.2d 554, 556–57 (2d Cir.1975), *cert. denied,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976). As a court has no power to serve as a proxy consular officer, that part of the district court's order that purports to direct the issuance of visas is without force and effect.

To remedy this error, we vacate that portion of the district court's order requiring that "appropriate entry visas" be issued. The court should recast the injunctive portion of its order to provide that Pasti may not be denied entry to the United States under subsection 27 on grounds inconsistent with the court's interpretation of the statute. Based on the assumption that there were no grounds for Pasti's exclusion other than those advanced at the time his application was denied, we hold that the State Department is not precluded from refusing him entry on grounds arising subsequent thereto. Therefore, should Pasti reapply for a nonimmigrant visa, the State Department will process his application subject to applicable law as interpreted in the district court's decision.

### III. CONCLUSION

Because Presidential Proclamation 5377 moots *City of New York,* we dismiss the appeal in that case and vacate the judgment of the district court. We find that the Moynihan–Frank Amendment does not moot *Cronin,* but hold that the district court exceeded its authority by ordering that an entry visa be issued to Pasti. Accordingly, we vacate this portion of the order and remand so that the district court may reformulate it to match the declaratory portion of its order.

*So ordered.*